IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELLE BARLOW-AHSAN, | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION |
| | : | |
| KILOLO KIJAKAZI,[1] | : | |
| Acting Commissioner of Social Security, | : | No. 21-cv-02220-RAL |
| | : | |
| Defendant | : | |

RICHARD A. LLORET                                                                October 17, 2023
U.S. Magistrate Judge

**MEMORANDUM OPINION**

The Plaintiff, Michelle Barlow-Ahsan[2] ("Ahsan") has appealed the final decision of the Commissioner of Social Security, which was rendered through the opinion of an Administrative Law Judge ("ALJ"). The ALJ's opinion denied Ms. Ahsan's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("SSA"). 42 U.S.C. §§ 401-434, 1382-1383f. The ALJ determined that Ms. Ahsan was not disabled under the SSA and its regulations. R. 30-31.[3] Plaintiff claims the ALJ committed error. Doc. No. 10 ("Pl. Br.")[4] at 4. Because I find that the ALJ did not err, I affirm the Commissioner's decision.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).
[2] Ms. Barlow-Ahsan was referred to as "Ms. Ahsan" in Plaintiff's brief. Doc. No. 10, at 1. In deference to her choice, I have referred to her as Ms. Ahsan or "Plaintiff."
[3] All references to the administrative record are listed as "R. ____." The administrative record is located at ECF Doc. No. 15.
[4] Unless otherwise noted, as here, all references to the electronically docketed record are cited as "Doc. No. ___ at ___."

## PROCEDURAL HISTORY

In her 2015 application, Ms. Ahsan alleged a disability date of August 2, 2015. R. 15, 443. After her application was denied at the initial review level, R. 177-84, Ms. Ahsan requested and received a hearing before an ALJ, at which she and a vocational expert ("VE") testified, in June of 2017. R. 159. The ALJ found that Ms. Ahsan was not disabled, R. 156-70, but the Appeals Council granted Ms. Ahsan's request for review and remanded her case. R. 171-76.

On remand, a new ALJ held a hearing in August of 2019, at which Ms. Ahsan and a VE testified. R. 71-112. The ALJ scheduled a supplemental hearing in December of 2019, at which a medical expert ("ME") and a VE testified. R. 39-70. On January 3, 2020, the ALJ issued an opinion finding that Ms. Ahsan was not disabled. R. 12-31. The Appeals Council denied Ms. Ahsan's request for review. R. 1-6. This request for judicial review under 42 U.S.C. § 405(g) followed.

## FACTUAL BACKGROUND

### A.   The Claimant's Background

Ms. Ahsan's date last insured ("DLI") for DIB is September 30, 2015. R. 18. Ms. Ahsan was born in 1965, and so was 50 years old on her DLI, which qualifies her as a person closely approaching advanced age. R. 29. See 20 C.F.R. 404.1563. Her past relevant work was as a deli slicer and nurse's aide. R. 29.

### B.   The ALJ's decision.

The ALJ found that Ms. Ahsan was not disabled under the SSA. R. 30, 31. In reaching this decision, the ALJ made findings of fact and conclusions of law pursuant to

Social Security's five-step, sequential evaluation process.[5] At steps one and two, the ALJ found that Ms. Ahsan had not engaged in substantial gainful activity (SGA) since August 2, 2015, and that she suffered from the following severe conditions: COPD, diabetes with neuropathy, osteoarthritis of the knee with tear, major depressive disorder, generalized anxiety disorder, and unspecified trauma disorder. R. 18. In addition, the ALJ found that Ms. Ahsan suffered from a variety of non-severe conditions. *Id*. at 18-19. None of Ms. Ahsan's conditions equaled the severity of a "listing," at step three.[6] *Id*. at 20.

At step four the ALJ assessed Ms. Ahsan's residual functional capacity ("RFC") and decided that Ms. Ahsan could perform light work,[7] with some restrictions. R. 22. The ALJ determined that Ms. Ahsan was unable to perform her past work. R. 29. At step five the ALJ determined that, considering Ms. Ahsan's age, education, work experience, and RFC, there were a significant number of jobs that she could perform in the national

---

[5] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether the claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the RFC to perform the requirements of his past relevant work ("PRW"), if any; and (5) is able to perform any other work in the national economy, taking into consideration his RFC, age, education, and work experience. See 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

[6] The regulations contain a series of "listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work the claimant may have performed in the past. *Id*.

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b). *See also* SSR 83-10.

economy, based on the testimony of the VE. R. 30. As a result, the ALJ concluded that Ms. Ahsan was not disabled. *Id.*

## LEGAL STANDARDS

My review of the ALJ's decision is deferential. I am bound by her findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining whether substantial evidence supports the ALJ's decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). If the ALJ's decision is supported by substantial evidence, her disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find

4

that the decision otherwise is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

## DISCUSSION

Ms. Ahsan advances six[8] arguments: 1) the ALJ improperly weighed the medical evidence (Pl. Br. at 6-13); 2) the ALJ improperly based her decision about Ms. Ahsan's mental condition on the ALJ's lay opinion (Pl. Br. at 13-15); 3) the ALJ erred when evaluating whether Ms. Ahsan was disabled for any 12-month period (Pl. Br. at 15-16); 4) the ALJ erred by failing to include all functional limitations in the RFC (Pl. Br. at 17-22); 5) the ALJ erred by failing to obtain a reasonable explanation for an inconsistency between the vocational expert's testimony about job requirements and the job requirements found in the Dictionary of Occupational Titles ("DOT") (Pl. Br. at 22-27); 6) because Commissioner Andrew Saul's appointment violated the Constitution, the ALJ and Appeals Council Judges lacked the power to decide this case (Pl. Br. at 27-29).

**1. The ALJ properly weighed the medical evidence.**

Ms. Ahsan contends that the ALJ improperly weighed the medical evidence (Pl. Br. at 6-13). Her argument boils down to the contention that seven opinions from providers can't be wrong. Pl. Br. at 3. But the ALJ carefully assessed the medical evidence in her 16-page opinion (R. 15-31), and reasonably explained flaws and inconsistencies in each provider's opinion. R. 27-29. For example, the ALJ pointed out that Amy Hall, DPM, whose opinions appear at R. 744-47 and 1724-30, assessed limits

---

[8] Administrative Law Judges, like Magistrate Judges, make mistakes, but the suggestion that an ALJ got six issues so wrong that each one warrants remand triggers considerable skepticism. *See* Ruggero J. Aldisert, *The Appellate Bar: Professional Competence and Professional Responsibility—A View from the Jaundiced Eye of the Appellate Judge*, 11 Cap. U. L. Rev. 445, 458 (1982).

5

far beyond her treatment and expertise, as a podiatrist treating Ms. Ahsan's diabetic neuropathy. R. 27. In addition, Dr. Hall's severe lifting and stooping limitations were inconsistent with her treatment records, which showed a "neurological exam within normal limits without mention of strength or gait abnormalities." R. 27 (citing Exhibits 6F, 36F, and 37F (R. 609-17, 1724-30, and 1731-53, respectively). Dr. Hall's opinions were the kind of "check the box" reports, bereft of explanatory commentary, that are "weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993).

The ALJ proceeded in the same fashion, methodically and reasonably, to weigh the opinions of Marguerita Torres, N.P. (R. 748-52 and 1789-96), Michael Cornwall, M.D. (R. 753-56), Kelly Lopez, M.D. (R. 757-60), and Yusef Khan, M.D. R. 27-29. I have reviewed the record, in each instance, and I find that the ALJ fairly weighed the medical opinions and based her assessment on substantial evidence.

The ALJ relied on the testimony of Dr. Washburn, a physician familiar with the Social Security regulations, who evaluated the medical records and provided testimony based on that review. R. 29. Dr. Washburn's testimony formed the basis of the RFC limitations. R. 22, 29. Ms. Ahsan's brief impugned Dr. Washburn's professional qualifications and contended that the doctor misrepresented his resume. Pl. Br. at 7. When I issued an Order (Doc. No. 13) requiring the parties to provide further facts and briefing on Plaintiff's charges against Dr. Washburn, Plaintiff's counsel filed a joint submission "withdraw[ing] the arguments made with respect to Dr. Washburn." Doc. No. 14, at 1. I accepted the withdrawal. Doc. No. 15. I will address Plaintiff's arguments that are not based on objections to Dr. Washburn's qualifications.

Plaintiff contends that the ALJ should have relied on treating provider opinions, rather than the opinion of a reviewing physician (Dr. Washburn). Pl. Br. at 5-13.

Because Ms. Ahsan's case was filed before March 27, 2017, the regulations in effect at the time required the ALJ to give "controlling weight" to treating physician opinions under certain circumstances. The new regulations dispensed with this preference. *Compare* 20 C.F.R. § 404.1527 (evaluating opinion evidence for claims filed before March 27, 2017) *with* 20 C.F.R. § 404.1520c (consideration and articulation of medical opinions for claims filed on or after March 27, 2017).

Under the old regulations, a treating source's opinion was entitled to controlling weight when it was supported by medically acceptable clinical and laboratory diagnostic techniques and was consistent with other substantial evidence in the record.[9] *See* 20 C.F.R. § 404.1527; SSR 96-2p, 1996 WL 374188 (July 2, 1996). A treating source's opinion could be rejected "on the basis of contradictory medical evidence." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *see Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991) (contradictory opinions by state agency physicians was a sufficient basis for refusing to give a treating physician's conclusory opinion controlling weight); *Brown v. Astrue*, 649 F.3d 193, 197 (3d Cir. 2011) (ALJ "clearly explained" why she gave greater weight to the opinion of a medical consultant than to the treating physician's opinion). So too could an opinion be rejected if there was insufficient clinical data, *see Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985), or if the opinion was contradicted by the physician's own treating notes or the patient's activities of daily living. *See Smith v. Astrue*, 359 F. App'x 313, 316-17 (3d Cir. 2009) (not precedential). The opinion could be accorded "more or less weight depending upon the extent to which supporting

---

[9] A treating source is a "physician, psychologist, or other acceptable medical source" who provides a patient with "medical treatment or evaluation," and has an "ongoing treatment relationship with the patient." 20 C.F.R. § 404.1502. A medical source may be considered a treating source where the claimant sees the source "with a frequency consistent with accepted medical practice for the type of treatment . . . required for [the claimant's] condition(s)." *Id.*

explanations are provided." *Plummer*, 186 F.3d at 429 (*citing Newhouse*, 753 F.2d at 286).

The Third Circuit has been clear that, even under the pre- March 27, 2017 rules, an ALJ was not bound to a rigid hierarchy of deference:

> Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, *see, e.g.*, 20 C.F.R. § 404.1527(d)(1)-(2), "[t]he law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity," *Brown v. Astrue,* 649 F.3d 193, 197 n. 2 (3d Cir.2011). State agent opinions merit significant consideration as well. *See* SSR 96–6p ("Because State agency medical and psychological consultants ... are experts in the Social Security disability programs, ... 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] ... to consider their findings of fact about the nature and severity of an individual's impairment(s)....").

*Chandler*, 667 F.3d at 361; *see Salerno v. Commr. of Soc. Sec.*, 152 Fed. Appx. 208, 209–10 (3d Cir. 2005) (non-precedential) (non-examining physician's opinion may be given more weight than an examining physician's); *Clark v. Social Sec. Admin.*, 33 Fed. Appx. 643, 646 (3d Cir. 2002) (non-precedential) ("an ALJ may rely on the opinion of a non-examining medical source, even when it contradicts the opinion of a treating physician, when it is consistent with the record") (*citing Jones,* 954 F.2d at 128).

Here the ALJ carefully assessed the medical evidence and reasonably explained flaws and inconsistencies in each treatment provider's opinion. R. 27-29. The ALJ properly relied on the reviewing physician's opinion, which was consistent with the medical evidence. R. 29. My review of the record convinces me the ALJ's determination was reasonable and based on substantial evidence. There was no error.

Plaintiff argues that Dr. Washburn "never even acknowledged Ms. Ashon's [sic] diagnosis of lumbar radiculopathy or her preulcerative callus[,]" citing to R. 741, 550-51. Page 741 of the record is the cover sheet of a fax transmitted sleep study. It has nothing

8

to do with lumbar radiculopathy or pre-ulcerative callus. Pages 550-51 of the record are two pages of a representative brief, directed to the ALJ, dated December 17, 2019. The two pages of the brief make no mention of lumbar radiculopathy or pre-ulcerative callus.

I searched elsewhere in Plaintiff's brief for mention of lumbar radiculopathy or pre-ulcerative callus. I found a reference at page 2 of Plaintiff's brief, but again, the record citations turned up no mention of lumbar radiculopathy or pre-ulcerative callus. See Pl. Br. at 2 (citing R. 587, 588, 590, 591, 670, 1307, and 1570). I have painstakingly followed Plaintiff's record citations, all for naught. A simple failure to cite to the record is immediately obvious when reading the brief. Not so when record citations turn out to be dry wells. It took considerable time to assure myself that the Plaintiff's record citations on this point were a Potemkin.

I conclude that Plaintiff has supplied no support in the record for her assertion that she had lumbar radiculopathy[10] or pre-ulcerative callus that Dr. Washburn ignored. If there is something in the record that supports her argument, Plaintiff has forfeited the issue by providing inaccurate record citations. *Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortg. Services, L.P.*, 785 F.3d 96, 100–02 (3d Cir. 2015) (the absence of correct record citations forfeited an argument); *United States v. Maes*, 961 F.3d 366, 377 (5th Cir. 2020) ("failure to include record citations . . . bolsters the conclusion that this challenge is forfeited because of inadequate briefing.").

Plaintiff also argues that Dr. Washburn did not listen to Plaintiff's testimony, which he was bound to do under the Commissioner's regulations. Pl. Br. at 7-8 (citing to HALLEX 1-2-6-70(b)). The "HALLEX" is the SSA's Hearings, Appeals and Litigation

---

[10] An EMG and nerve conduction study dated July 19, 2017, showed no evidence of lumbar radiculopathy. R. 1726.

Law manual. It provides internal guidance on procedure to SSA staff. *See*

https://www.ssa.gov/OP_Home/hallex/I-01/I-1-0-1.html, last accessed April 27, 2023.

HALLEX 1-2-6-70(b) says that

> At the hearing, the ALJ must advise the claimant of the reason for the ME's presence and explain the procedures all participants will follow.
> The ME may attend the entire hearing, but this is not required. If the ME was not present to hear pertinent testimony, such as testimony regarding the claimant's current medications or sources and types of treatment, the ALJ will summarize the testimony for the ME on the record.

https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-70.html , last accessed April 27, 2023.

HALLEX guidelines are not binding on the Commissioner and do not have the force of law. *Bordes v. Commissioner of Social Sec.*, 235 Fed.Appx. 853, 859 (3d Cir. 2007) (non-precedential) (quoting *Schweiker v. Hansen,* 450 U.S. 785, 789 (1981) (Social Security Administration Claims Manual "has no legal force, and … does not bind the SSA")); *Martinez v. Kijakazi*, 2022 WL 118123, at *2 (E.D. Pa. 2022). The two District of Alaska cases cited by Plaintiff are unconvincing. Pl. Br. at 8. The Supreme Court and Third Circuit have said the Commissioner's internal regulations do not have the force of law. *Schweiker,* 450 U.S. at 789; *Bordes*, 235 Fed.Appx. at 859. If the HALLEX guidelines do not have the force of law, they cannot create any legally enforceable duty, and it is not appropriate to remedy their violation through remand.

Even if I found that the ALJ committed error by not summarizing Ms. Ahsan's testimony for Dr. Washburn, I find there was no prejudice, for several reasons. First, counsel has not explained what difference it would have made if the ALJ had summarized Ms. Ahsan's testimony for Dr. Washburn. Pl. Br. 7-8. Plaintiff seeks a remand for an alleged error without showing that the error was harmful. *See Shinseki v.*

*Sanders*, 556 U.S. 396, 407-10 (2009) (harmless error analysis applied to review of VA administrative determination); *Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005) (generalized claim that an error was harmful was not sufficient to warrant a remand). The burden is on Ms. Ahsan, as the appellant, to show that the error caused harm. *Shinseki*, 556 U.S. at 410-11. She has not met her burden. Without a showing that the alleged error was harmful, remand is not appropriate.

Second, at the hearing counsel stated "[n]o objections to the witness testifying," and did not request that Plaintiff's testimony be summarized for Dr. Washburn. R. 47. There is no doctrine of forfeiture for failure to object to evidence in a Social Security case. *See Cirko on behalf of Cirko v. Commissioner of Social Security*, 948 F.3d 148, 157 (3d Cir. 2020) (the non-adversarial nature of Social Security proceedings means that issue exhaustion is not required). Because of this the failure to object is not fatal, as it ordinarily would be in a civil case. *See Ansell v. Green Acres Contracting Co., Inc.*, 347 F.3d 515, 526 (3d Cir. 2003). I may nevertheless take the lack of objection as evidence that the failure to summarize Plaintiff's testimony was harmless. *See Zirnsak v. Colvin*, 777 F.3d 607, 618 (3d Cir. 2014) (failure to raise an issue before the ALJ may be considered in assessing its merit). I do so, and I find that the failure to summarize the Plaintiff's testimony was not harmful error.

Third, I do not see how a summary of Ms. Ahsan's testimony (R. 77–112) would have changed the thrust of Dr. Washburn's testimony, which was focused on an analysis of the objective medical evidence. R. 45–56. The ALJ—the decision maker—heard and considered Plaintiff's testimony before formulating an RFC. R. 77–112, 15, 23–24. That suffices to cure any potential harm occasioned by the failure to summarize Plaintiff's

testimony for Dr. Washburn. I find there was no prejudice resulting from the failure to summarize Plaintiff's testimony.

Plaintiff also argues that there was no need for Dr. Washburn's testimony, because there were lots of medical opinions in the record. Pl. Br. at 8. Plaintiff acknowledges the propriety of calling on a medical expert to aid the ALJ in assessing the medical records. Pl. Br. at 8 (citing to HALLEX 1-2-5-32). In this case the record was over 2,000 pages long.[11] R. 1-2,058. Having a medical expert look at the entire medical record was perfectly appropriate. Plaintiff consented to having Dr. Washburn testify. R. 110-11. Plaintiff's argument is meritless.

I find the ALJ committed no error in weighing the medical opinion evidence.

### 2. The ALJ properly based her decision about Ms. Ahsan's mental condition on the evidence.

Plaintiff contends that the ALJ improperly based her decision about Ms. Ahsan's mental condition on the ALJ's lay opinion. Pl. Br. at 13-15. This is not so. Instead, the ALJ thoroughly analyzed the rather limited mental health records, R. 26-27 (citing to Exhibit 38F, R. 1754-68), and concluded that the psychiatric opinion by Marguerita Torres, N.P., overstated Plaintiff's mental limitations. R. 27-28. The ALJ explained that Ms. Torres' opinion was not supported by her own treatment records. R. 27. The ALJ explained that, for example, "she [Ms. Torres] notes significant attentional issues yet her mental status examinations show good attention and concentration, a logical thought process, and intact cognition." R. 27 (citing to Exhibit 38F, R. 1754-68). The ALJ also noted that Ms. Torres' opinion "cites emotional instability as support for her conclusions, yet her progress notes expressly show stability with treatment." R. 27–28. I

---

[11] The medical records are 1,500 pages long. *See* R. 558–2058.

12

have reviewed the record, and I find that the ALJ correctly summarized the limited mental health treatment notes. R. 1754-68. The ALJ explained her reasoning, and it was based on substantial evidence. It was Ms. Ahsan's burden to produce evidence and prove her RFC limitations at step four, and the ALJ found her evidence of mental limitations unconvincing. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (explaining the burden of proof in a disability case); *Sykes v. Apfel*, 228 F.3d 259, 262– 63 (3d Cir. 2000) (same); *Connors v. Commissioner of Social Security*, No. 21-3219, 2022 WL 4103617, at *2 (3d Cir. 2022) (not precedential) (burden is on Plaintiff at step four to prove limitations to be incorporated in the RFC). The ALJ did not commit error.

Ms. Ahsan argues the ALJ should have done more to develop the record of mental health limitations. Pl. Br. at 13. Ms. Ahsan was represented by an attorney at the hearing stage. An ALJ is responsible for reasonably developing the record, even when counsel represents a claimant. *Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir. 2005); *Boone v. Barnhart*, 353 F.3d 203, 208 n.11 (3d Cir. 2003). Nevertheless, when a claimant is represented by counsel, it is ordinarily reasonable for the ALJ to rely on counsel to present the best available case. *Wert v. Commissioner of Social Sec.*, Civ. No. 13–5705, 2015 WL 1808594, at *12 (E.D. Pa. 2015) (internal citations and quotations omitted). This is not a case where the ALJ should have been alerted to the absence of pertinent records, either by obvious gaps in the evidence or by counsel's advice. Counsel did not ask for help from the ALJ to obtain records. Even in her briefing in this court, Ms. Ahsan has not explained what additional records should have been obtained, or how they would have been material. While Plaintiff need not proffer the missing records as an exhibit to her briefing, a showing of prejudice is necessary before I can grant relief.

13

Ms. Ahsan has neither demonstrated that the ALJ committed an error, nor that the error was harmful.

### 3. The ALJ did not err when determining that Ms. Ahsan was not disabled for any 12-month period.

Plaintiff argues that the ALJ erred when evaluating whether Ms. Ahsan was disabled for any 12-month period (Pl. Br. at 15-16). The argument is meritless.

Plaintiff contends that "the ALJ was well aware that [s]he needed to consider whether a 12-month period of disability existed here." Pl.'s Br. at 15; R. 20, 202. The ALJ correctly defined disability "as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." R. 15-16. During her step-2 discussion, the ALJ found that "there is little evidence in the record that these impairments caused more than a minimal impact on basic work activities for 12 continuous months during the alleged period of disability[.]" (R. 20). When the ALJ determined that Ms. Ahsan was not "disabled," R. 31, she was applying the correct standard, including the requirement that she evaluate whether the disability lasted for any 12-month period. The ALJ did not commit error.

### 4. The ALJ did not err in assessing functional limitations in the RFC.

Plaintiff argues that the ALJ committed error by failing to include functional limitations suggested by Plaintiff's care providers in the RFC. Pl. Br. at 17-22. The ALJ appropriately determined that the limitations set forth by Plaintiff's physical care providers were not supported by the record. R. 22, 48-50. The ALJ's determination was based on substantial evidence, including Dr. Washburn's opinion.

Plaintiff contends that mental work-related limitations were not properly accounted for. Pl.'s Br. at 21. But Plaintiff did not allege a mental impairment in her application for benefits, nor did Plaintiff request further development of the record regarding any supposed mental complaints. R. 459; *supra* at p. 13. There was no substantial evidence of mental work-related limitations in the record. *Id*. The ALJ accounted for mental work-related limitations supported by the record by restricting Plaintiff to low-stress jobs, defined as requiring only occasional decision making and only occasional changes in the work setting, and also restricting Ms. Ahsan to simple, routine tasks at a consistent pace, rather than a production rate pace where each task must be completed within a time deadline. R. 22.

5. **There was no inconsistency between the vocational expert's testimony about job requirements and the job requirements found in the Dictionary of Occupational Titles ("DOT").**

Plaintiff argues that the ALJ erred by failing to obtain a reasonable explanation for a supposed inconsistency between the vocational expert's testimony about job requirements and the job requirements found in the DOT. Pl. Br. at 22-27. The RFC limited Ms. Ahsan to "simple, routine, repetitive tasks with only occasional changes in the work setting." R. 22. The ALJ's decision rests on three jobs, as described in the DOT and by the vocational expert, that were used as examples of jobs that Ms. Ahsan could perform within the bounds of the RFC finding. These jobs were: Dental Floss Packer (DOT # 920.687-082), Inspector (DOT # 559.687-074), and Assembler (DOT # 712.687-010) (collectively, the "Identified Jobs"). R. 30, 63.

Plaintiff argues that the ALJ failed to address an unresolved conflict between the residual functional capacity for simple, routine tasks and the general educational development (GED) reasoning level 2 assigned to the Identified Jobs in the *Dictionary*

15

*of Occupational Titles* ("DOT"). Pl.'s Br. at 23. I find there is no unresolved conflict between a GED reasoning level of 2 and simple, routine tasks.

The ALJ is entitled to rely on the vocational expert's testimony where there is no apparent unresolved conflict between that testimony and the DOT. SSR 00-4p, 2000 WL 1898704, at *4. Under the SSA's regulations, specific vocational preparation (SVP) (the amount of time that it takes to learn a job) is used to describe the relative complexity of a job, not the GED reasoning level. *SSR* 00-4p, 2000 WL 1898704 at *3. Under SSR 00-4p, an SVP of two corresponds to unskilled work, which involves carrying out simple duties. *Id.* "[U]nderstanding, remembering, and carrying out simple instructions" are "mental activities . . . generally required of competitive, remunerative, unskilled work." *SSR* 96-9p, 1996 WL 374185, at *6; *see* 20 C.F.R. §§ 404.1568(a), 416.968(a) (defining unskilled work as work that needs little or no judgment and consists of simple duties that can be learned on the job in a short period of time); *SSR* 85-15, 1985 WL 56857, at *4 ("The basic mental demands of competitive, remunerative, unskilled work include the ability (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, co-workers, and usual work situations; and to deal with changes in
a routine work setting").

The GED reasoning level assigned in the DOT to the Identified Jobs is "2." *See*
 DOT # 920.687-082 (https://occupationalinfo.org/92/920687082.html) (Dental Floss Packer); DOT # 559.687-074 (https://occupationalinfo.org/55/559687074.html) (Inspector); DOT # 712.687-010 (https://occupationalinfo.org/71/712687010.html) (Assembler) (accessed 10/17/2023). The SVP for each of the Identified Jobs is "2," as well. *Id.* The fact that each of the Identified Jobs has an SVP of 2 – used under the SSA

regulations to describe the job's mental demands – and a GED reasoning level of 2 bolsters the notion that there is no conflict between the RFC and DOT descriptions of the Identified Jobs.

GED reasoning level 2 calls for a worker to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DOT, Appendix C: Components of the Definition Trailer. https://occupationalinfo.org/appendxc_1.html (accessed 10/6/2023).

Courts in the Third Circuit have considered the DOT's reasoning level descriptions and have found that a GED reasoning level of 2 is consistent with a residual functional capacity for simple, routine, repetitive tasks. *See Meloni v. Colvin*, 109 F. Supp. 3d 734, 741 (M.D. Pa. 2015) ("There is a growing consensus within this Circuit and elsewhere that '[w]orking at reasoning level 2 [does] not contradict the mandate that [a claimant's] work be simple, routine, and repetitive'"); *Money v. Barnhart,* 91 F. App'x 210 (3d Cir. 2004) (not precedential) (finding no apparent inconsistency between reasoning level 2 and residual functional capacity for simple, routine, repetitive tasks); *see e.g., Pallo v. Comm'r*, Civ. No. 15-7385, 2016 WL 7330576 (D.N.J. Dec. 16, 2016).

The question is whether there is a material conflict between jobs described in the RFC as "simple, routine, repetitive tasks with only occasional changes in the work setting," and jobs described in the DOT as requiring a worker to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions." I find there is no conflict. The two descriptions fit together without discomfort. One would expect to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions when performing a simple routine repetitive task. There is

17

nothing inherently at odds between a "simple" job and one that requires "detailed but uninvolved" instructions. There is a difference in focus and verbal formulation between the two standards, but they describe the same type of jobs. Therefore, the ALJ did not commit error by failing to address the issue.

6. **Plaintiff is not entitled to relief as a result of the Constitutional flaw she identifies in Commissioner Andrew Saul's appointment.**

Plaintiff claims that Commissioner Andrew Saul's appointment violated the Constitution, and that as a result the ALJ and Appeals Council Judges who decided this case lacked the power to do so. Pl. Br. at 27-29. Because plaintiff is not entitled to relief as a result of the Constitutional flaw she identifies in Commissioner Andrew Saul's appointment, I will deny her claim.

Plaintiff argues that the Social Security Act provision that limits the President's authority to remove the Presidentially appointed, Senate-confirmed Commissioner of Social Security without good cause, 42 U.S.C. § 902(a)(3), violates the Constitutional requirement of separation of powers. Pl. Br. 27. The Commissioner agrees that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause. *See* Office of Legal Counsel, U.S. Dep't. of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021) ("OLC Op.") (Cited at Comm. Br. 17).

The Supreme Court teaches that even where a statutory removal provision exists that unconstitutionally restricts the President's discretion to remove an officer, a plaintiff complaining of the removal provision must demonstrate that the provision inflicted "compensable harm." *Collins v. Yellen*, 141 S. Ct. 1761, 1789 (2021).

18

Courts that have looked at this issue have concluded that a plaintiff in Ms. Ahsan's position cannot show a nexus between the removal clause and the adverse decision by an ALJ. *See West v. Saul*, Civ. No. 20-cv-5649, 2022 WL 16781547, at *16–17 (E.D. Pa. 2022) (Judge Sitarski) (collecting cases). This is not the same situation presented by an appointment clause problem. When an official takes office under an appointment that is Constitutionally defective, any act he takes is beyond his power and void. A removal clause defect presents a much more limited problem. Until there is evidence that the President wants to remove the official but cannot because of the statutory limitation on his power to do so, there is no judiciable harm presented. Even then, a plaintiff must show that the agency action would not have been taken but for the President's inability to remove the officer. *Consumer Financial Protection Bureau v. National Collegiate Master Student Loan Trust*, 575 F.Supp.3d 505, 508 (D. Del. 2021) (Bibas, J.); *Collins v. Department of the Treasury*, __ F.4th __, 2023 WL 6630307, at *7 (5th Cir. October 12, 2023) (plaintiff must show that the President would have reversed agency action but for his inability to remove the agency head); *Consumer Financial Protection Bureau v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023) ("to void an agency action due to an unconstitutional removal protection, a party must show that the agency action would not have been taken *but for* the President's inability to remove the agency head.").

Here, there has been no showing that the President would have ordered different agency action but for his inability to fire the Commissioner. Ms. Ahsan has not met her considerable burden to demonstrate a nexus between the unconstitutional removal statute and the agency action she complains of.

19

## CONCLUSION

For the reasons described above, I will dismiss Ms. Ahsan's complaint and enter final judgment affirming the Commissioner's decision.

                                         **BY THE COURT:**

                                         *Richard A. Lloret*
                                         **RICHARD A. LLORET**
                                         **U.S. Magistrate Judge**